**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EBIN NEW YORK, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. |
| TOM TRADING, LLC; TOM TRADING | § | |
| LLC D/B/A TOM TRADING SALES | § | Jury Trial Demanded |
| ASSOCIATE; KI SEOP KIM; KI SEOP KIM | § | |
| D/B/A TOM TRADING SALES | § | |
| ASSOCIATION, | § | |
| | § | |
| Defendants. | § | |

**ORIGINAL COMPLAINT**

Plaintiff, EBIN New York, Inc. ("EBIN" or "Plaintiff"), by and through its attorneys, Osha Bergman, Watanabe & Burton LLP file this Complaint against Defendants TOM TRADING, LLC; TOM TRADING LLC d/b/a TOM TRADING SALES ASSOCIATE; KI SEOP KIM; and KI SEOP KIM d/b/a TOM TRADING SALES ASSOCIATION ("Defendants"), and alleges, on knowledge as to its own actions, and otherwise on information and belief, as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for infringement of Plaintiff's trade dress and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), and for substantial and related trade dress infringement and unfair competition claims under the common laws of the State of Texas, all arising from the Defendants' unauthorized use of Plaintiff's trade dress in connection with the marketing, advertising, promotion, sales, and distribution of Defendants' infringing product.

2.      Plaintiff seeks injunctive, monetary, and declaratory relief.

## JURISDICTION

3.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C.

§§ 1331, and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28

U.S.C. § 1367 because those claims are so related to Plaintiff's federal trade dress infringement

claims, over which this Court has original jurisdiction, that the additional claims form part of the

same case or controversy under Article III of the United States Constitution.

4.      This Court has personal jurisdiction over TOM TRADING LLC because TOM

TRADING LLC is a limited liability company organized under the laws of the state of Texas and

has a principal office located in Texas and because a substantial part of the events giving rise to

the claims occurred within this judicial district.

5.      This Court has personal jurisdiction over TOM TRADING LLC d/b/a TOM

TRADING SALES ASSOCIATE because upon information and belief, TOM TRADING LLC

d/b/a TOM TRADING SALES ASSOCIATE is a limited liability company organized under the

laws of the state of Texas that maintains a registered office in Texas, and because a substantial part

of the events giving rise to the claims occurred within this judicial district.

6.      This Court has personal jurisdiction over KI SEOP KIM because upon information

and belief, KI SEOP KIM is domiciled in the state of Texas, and because a substantial part of the

events giving rise to the claims occurred within this judicial district.

7.      This Court has personal jurisdiction over KI SEOP KIM d/b/a TOM TRADING

SALES ASSOCIATION because upon information and belief, KI SEOP KIM d/b/a TOM

TRADING SALES ASSOCIATION is a sole proprietorship having a business address maintained

in the state of Texas, and because a substantial part of the events giving rise to the claims occurred

within this judicial district.

## VENUE

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

9.      Plaintiff is a corporation organized and existing under the law of the state of New Jersey, with its principal place of business at 506 US-46, Teterboro, New Jersey 07608.

10.     Upon information and belief, Defendant TOM TRADING LLC is a limited liability company organized under the laws of the state of Texas, with its principal place of business and/or warehouse located at 12707 Boheme Dr. Houston, TX 77024, Unit 1004 and/or 9777 Harwin Dr. #206 Houston TX 77036.

11.     Upon information and belief Defendant TOM TRADING LLC is owned by Kiseop Kim (potentially A.K.A. "Tom Kim" and/or Defendant "KI SEOP KIM").

12.     Defendant TOM TRADING LLC can be served through its Registered Agent KI S KIM at the address 12707 Boheme Dr. Houston, TX 77024, Unit 1004.

13.     Upon information and belief, Defendant TOM TRADING LLC d/b/a TOM TRADING SALES ASSOCIATE is a limited liability company organized under the laws of the state of Texas, having a business address located at 9777 Harwin Dr. #206, Houston TX 77036, and a registered office located at 12707 Boheme Dr. #1004, Houston, TX 77024.

14.     Upon information and belief, Defendant KI SEOP KIM is an individual domiciled in the state of Texas having a residence located at 12707 Boheme Dr. Apt. 104, Houston TX 77024.

15.     Upon information and belief, Defendant KI SEOP KIM d/b/a TOM TRADING SALES ASSOCIATION is a sole proprietorship organized under the laws of the state of Texas, having a business address located at 874 Yorkchester Dr. #134, Houston, TX 77079 and/or 874 Yorkchester Dr. Apt 134 Houston TX 77079-3441.

## FACTS

### A.    Relevant Background on Plaintiff and Plaintiff's Trade Dress

9.    EBIN is engaged in the business of developing, manufacturing, distributing, and selling cosmetics and beauty supplies such as wigs, hair care products, hair styling products, and skin cosmetic products, and color cosmetic products.

10.    EBIN entered into the beauty supply business in or around 2014.

11.    EBIN is the owner of the Federal trademark registrations 24 HOUR EDGE TAMER® (U.S. Registration No. 4,958,982, registered May 17, 2016) and 48 HOUR EDGE TAMER® (U.S. Registration No. 4,964,624, registered May 24, 2016).

12.    EBIN has become a trend-leader in the beauty supply industry, particularly in "edge control" products, by incurring substantial business expenses including time, labor, skill, and money, to develop and design its product packaging, finding suitable manufacturers, and vigorously advertising its products, including by leveraging the decades of beauty supply industry experience of its executives.

13.    On or about April 2015, EBIN began marketing its 24 HOUR EDGE TAMER® hair pomade ("Edge Tamer") and related products in a unique double-layer container.

14.    EBIN was the first in the beauty supply industry to market hair pomade products and particularly "edge control" products in a double layered container described herein.

15.    On or about March 2016, EBIN began distributing certain acrylic plastic display cases to be used for containing and displaying EBIN's products, including the Edge Tamer products.

### B.    Edge Tamer and Its Trade Dress

16.    Edge Tamer is a water-based hair pomade gel.

17.    Edge Tamer is packaged in a distinctive, double-layered container.

4

18.     The outer layer of the double-layered container is made of polyethylene terephthalate, also known as PETE, and is transparent and clear in color.

19.     The inner layer of the double-layered container is made of a similar plastic substance as the outer layer, and is opaque and varies in color, e.g. grape-purple, lemon-yellow, orange, and chocolate-brown.

20.     The outer layer and inner layer of the Edge Tamer container are press-fitted and removable from one another, and the outer layer is re-closeable, having a threadably sealable cap that interfaces with the threads on the outer ring of the mouth of the outer layer.

21.     The following photographs are representative of the design of the packaging of Edge Tamer:



22.     EBIN introduced the above-shown pioneering and signature look of the double-layered container in 2015.

23.     There are two elements of distinctiveness of Edge Tamer's packaging: illuminance and spacing.

24.     The transparent and glossy outer-layer of the packaging causes light shown upon it to refract and reflect, which enhances the packaging's illuminance. When viewed from a distance, particularly on well-lit retail store shelves, this illuminance effect causes the Edge Tamer packaging to stand out and make it distinctive from other product packaging in the market.

25.     The inner layer of the Edge Tamer container is anchored on the mouthpiece of the transparent outer layer. This mouthpiece is hidden under the cap of the container.

26.     This structure creates the space between the vertical and bottom surfaces of the inner layer and outer layer of the container. This in turn creates an appearance that the inner-layer is floating within the outer layer. This floating illusion imparts a luxurious feel to the packaging.

27.     When Edge Tamer containers are displayed on shelves side-by-side, the spacing between the inner layers and outer layers causes the opaque inner layers of the containers to be distanced from each other from one container to another, creating an appearance of sparser positioning of each individual container.

28.     The combination of the illuminance, floating illusion, and inner layer spacing gives eloquence and a high-end aesthetic to the Edge Tamer packaging.

29.     Prior to EBIN's introduction of this packaging into the market for "edge control" products, no other "edge control" products were packaged in such a way.

30.     The packaging for Edge Tamer lacks functionality.

31.     The transparent outer layer provides no more protection of the pomade gel than an opaque layer would; the space between the inner and outer layer contains no gas other than ambient air. The packaging does not enhance the quality of the pomade gel by any means. In fact, the additional weight and unnecessarily large packaging add cost to the freight and shipping of the Edge Tamer product.

32.     Although the Edge Tamer packaging is aesthetically appealing, the design does not positively affect the cost or quality of the goods contained therein.

33.     Except to the extent the design indicates EBIN as its origin, the packaging design does not have a significant effect on the competition among manufacturers in the market for "edge control" products.

**C.     Relevant Background on Defendants and Defendants' Unlawful Conduct**

34.     Upon information and belief, Defendants engage in the business of manufacturing, distributing, and/or selling beauty supplies including hair pomades.

35.     Upon information and belief, Defendants are direct competitors of Plaintiff.

36.     Upon information and belief, at least as early as 2017, Defendants began purchasing and distributing EDGE BOOSTER hair pomade ("Edge Booster").

37.     Upon information and belief, Defendants purchase the 3.8 oz EDGE BOOSTER products and sells them to retailers, namely, beauty supply stores in Texas.

38.     Edge Booster is a water-based hair pomade.

39.     Defendants' Edge Booster product directly competes with Plaintiff's Edge Tamer product.

40.     Edge Booster is packaged in a double layered container. The outer layer is transparent and clear in color. The outer layer is made of polyethylene terephthalate, also known as PET or PETE, and the inner layer being opaque and varying in color, made of similar plastic substance.

41.     The outer layer and inner layer of the Edge Booster container is removably press-fitted and the outer container is re-closable with a threadably sealable cap. The threads on the outer ring of the mouth of the outer layer interface with the threadably sealable cap.

42.     The following photographs are representative of the design of the packaging of the Edge Booster product:



43.     The packaging of Edge Booster is confusingly similar to the Edge Tamer trade dress in all material aspects of appearance except for the texts, and the heights of the inner and outer layers.

44.     But for the differences in the heights of the Edge Booster container and the Edge Tamer container, the packaging for Edge Tamer and the packaging for Edge Booster are fully compatible with one another and may be used interchangeably. For instance, the constituent parts of the containers may be combined in various combinations without any forced assembly. Seen on the left is the outer layer of the Edge Booster container assembled with the cap and inner layer of the Edge Tamer product. Seen on the right is the outer layer and inner layer of the Edge Tamer container assembled with the Edge Booster cap:



45.   Defendants have not only copied the double layer design of the Edge Tamer trade dress, but have also copied the metric specification of Edge Tamer and Plaintiff's container, as well as the description of the product and directions for its use:



46.   The phrases on the packaging annotated in red in the above side-by-side image such as "textured natural look," "dry or damp hair," and "formulated in" are unique features of Plaintiff's products that are not industry standard and are not present on other "edge control" products marketed in the U.S.

47.     Defendants have also mimicked Plaintiff's strategy of adding fruity scents to the hair pomade or gel.

48.     The confusing similarities in Plaintiff's and Defendants' products are indicative of Defendants' willful infringement of Plaintiff's trade dress and are a violation of unfair competition laws.

49.     Defendants have enjoyed profits by selling the infringing Edge Booster products.

50.     Plaintiff has suffered damage to its business goodwill associated with its Edge Tamer product and loss of profits as a result of Defendants' conduct.

**COUNT I**
**(Trade Dress Infringement– 15 U.S.C. § 1125**
**As Against All Defendants)**

51.     Plaintiff restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

52.     The trade dress of the packaging for Plaintiff's Edge Tamer product is not functional. Plaintiff's trade dress is not essential to the use of purpose of the Edge Tamer hair pomade, and Plaintiff's trade dress does not affect the cost or quality of the Edge Tamer hair pomade except for adding cost to the freight and shipping of the Edge Tamer product.

53.     Plaintiff's exclusive use of the Edge Tamer trade dress does not put competitors at a significant non-reputation related disadvantage.

54.     The trade dress of the packaging for Plaintiff's Edge Tamer is inherently distinctive and/or has taken on a secondary meaning within the beauty supply market. By virtue of the substantial exclusive uses, advertising, promotion, and consumer and marketplace recognition of Plaintiff's trade dress for many years, Plaintiff's Edge Tamer trade dress, has garnered substantial

goodwill and reputation associated exclusively with Plaintiff, and is entitled to protection against likely confusion, deception or mistake.

55.     Plaintiff's Edge Tamer trade dress is entitled to protection under the Lanham Act. Plaintiff's Edge Tamer trade dress includes unique, distinct, and non-functional designs. Plaintiff has extensively and continuously promoted and used its Edge Tamer trade dress in the United States and in Texas before Defendants commenced their unlawful use of Plaintiff's trade dress in connection with the infringing Edge Booster product. Through that extensive and continuous use, Plaintiff's Edge Tamer trade dress has become a well-known indicator of the origin and quality of Plaintiff's edge control products. Plaintiff's Edge Tamer trade dress has also acquired substantial secondary meaning in the marketplace, before Defendants commenced their unlawful use of Plaintiff's trade dress in connection with the infringing Edge Booster product.

56.     The packaging of Defendants' Edge Booster product is confusingly similar to and closely resembles the trade dress of Plaintiff's Edge Tamer in shape, design, color, price, and packaging.

57.     The packaging of Defendants' Edge Booster is a colorable imitation of Plaintiff's Edge Tamer trade dress.

58.     The similarities between Defendants' Edge Booster packaging and Plaintiff's Edge Tamer trade dress are likely to cause confusion, mistake, and/or deception among the consuming public as to the source, origin, sponsorship, or approval of Defendants' Edge Booster by Plaintiff and create a likelihood that an ordinary consumer in the beauty supply market, specifically for the "edge control" market, will mistake Defendants' Edge Booster product for Plaintiff's Edge Tamer Product.

59.     Defendants' conduct is willful, deliberate, in bad faith, and undertaken with knowledge of Plaintiff's prior rights, and with full knowledge that Defendants have no right, license, or authority to use Plaintiff's trade dress or any confusingly similar variant thereof.

60.     Defendants' aforementioned acts constitute willful violation of Plaintiff's rights in violation of the Lanham Act, Section 32, 15 U.S.C. § 1114.

61.     Plaintiff has been and will continue to be harmed by Defendants' wrongful conduct.

62.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT II
### (False Designation of Origin – 15 U.S.C. § 1125
### As Against All Defendants)

63.     Plaintiff restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

64.     Defendants' marketing, advertising, promotion, sales, and distribution of the infringing Edge Booster products constitutes false designation of origin. Defendants have obtained an unfair advantage as compared to Plaintiff through Defendants' use of Plaintiff's trade dress. Defendants' use of Plaintiff's trade dress is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Plaintiff and as to the origin, sponsorship, and/or approval of Defendants' infringing Edge Booster product, at least by creating the false and misleading impression that Defendants' infringing Edge Booster product is manufactured by, authorized, or otherwise associated with Plaintiff.

65.     Plaintiff's Edge Tamer trade dress is entitled to protection under the Lanham Act. Plaintiff's Edge Tamer trade dress includes unique, distinct, and non-functional designs. Plaintiff has extensively and continuously promoted and used its Edge Tamer trade dress in the United States and in Texas before Defendants commenced their unlawful use of Plaintiff's trade dress in connection with the infringing Edge Booster product. Through that extensive and continuous use, Plaintiff's Edge Tamer trade dress has become a well-known indicator of the origin and quality of Plaintiff's edge control products. Plaintiff's Edge Tamer trade dress has also acquired substantial secondary meaning in the marketplace, before Defendants commenced their unlawful use of Plaintiff's trade dress in connection with the infringing Edge Booster product.

66.     Defendants' use of Plaintiff's Edge Tamer trade dress has caused substantial and irreparable injury and unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's Edge Tamer trade dress.

67.     Upon information and belief, Defendants' use of Plaintiff's Edge Tamer trade dress has been intentional, willful, and malicious. Defendants' bad faith is evidence at least by the similarity of the infringing products to Plaintiff's Edge Tamer trade dress, as demonstrated above, and by Defendants' continuing disregard of Plaintiff's trade dress rights.

68.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT III**
**(Trade Dress Infringement and Unfair Competition**
**Under the Common Law of Texas as Against All Defendants)**

69.     Plaintiff restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

70.     Defendants' unauthorized uses of Plaintiff's trade dress in connection with Defendants' advertising, promotion, and offering for sale of its products is likely to cause confusion, mistake and/or deception among the consuming public as to the source, origin and/or sponsorship of Defendants' business, products and/or services. The consuming public is likely to believe that Defendants' products are somehow sourced, affiliated or associated with, or licensed, sponsored, or endorsed by Plaintiff, when such is not the case.

71.     Defendants' unauthorized uses of Plaintiff's trade dress has been intentionally, deliberately, willfully, and wantonly undertaken with a view and purpose of deceiving the public, and trading on and benefiting from the substantial reputation and goodwill associated with Plaintiff's trade dress.

72.     Defendants' conduct alleged herein constitutes trade dress infringement and unfair competition in violation of the common law of Texas.

73.     Plaintiff has been and will continue to be harmed by Defendants' wrongful conduct.

74.     Defendants' aforesaid acts have irreparably harmed Plaintiff and will continue to irreparably harm Plaintiff unless enjoined by the Court, as a result of which Plaintiff is without adequate remedy at law.

75.     As the direct and proximate result of Defendants' deliberate and intentional infringement, Defendants have been unjustly enriched while Plaintiff continues to suffer injury in an amount not yet ascertained.

14

76.     In addition, upon information and belief, Defendants' misconduct has been fraudulent, willful and malicious, such that it raises the presumption of conscious indifference to the consequences of its actions, thereby entitling Plaintiff to an award of exemplary damages in an amount to be determined by the enlightened conscience of the jury.

77.     Upon information and belief, Defendants' acts have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge and conscious disregard of Plaintiff's rights and with intent to cause confusion, and to trade off of the vast good will in Plaintiff's trade dress, making this an exceptional case and entitling Plaintiff to enhanced damages and attorney's fees at least as provided under Texas Civil Practices & Remedies Code § 41.003.

### COUNT IV
### (Misappropriation Under the
### Common Law of Texas as Against All Defendants)

78.     Plaintiff restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

79.     Defendants' marketing, advertising, promotion, sales, and distribution of their Edge Booster product having the infringing trade dress, in direct competition with Plaintiff's Edge Tamer product, constitute common law misappropriation.

80.     Plaintiff has incurred substantial business expenses including time, labor, skill, and money, to develop and design its Edge Tamer trade dress, find suitable manufacturers, and vigorously advertise its Edge Tamer product, including by leveraging the decades of beauty supply industry experience of its executives. Plaintiff has developed goodwill and reputation associated with its Edge Tamer trade dress through these efforts.

81.     Defendants, through their use of Plaintiff's Edge Tamer trade dress, have gained a special advantage in their competition with Plaintiff's Edge Tamer product because Defendants

have been burdened with little or none of the expense and efforts incurred and made by Plaintiff to develop its Edge Tamer trade dress.

82.     Defendants have commercially damaged Plaintiff, at least by causing confusion as to origin and/or sponsorship of Defendants' Edge Booster products, by creating the false and misleading impression that their infringing Edge Booster products are manufactured, authorized by, or otherwise associated with Plaintiff, and by taking away sales of Edge Tamer that Plaintiff would have made.

83.     Plaintiff's Edge Tamer trade dress is entitled to common law protection. Plaintiff's Edge Tamer trade dress includes unique, distinct, and non-functional designs. Plaintiff has extensively and continuously promoted and used its Edge Tamer trade dress in the United States and in Texas before Defendants commenced their unlawful use of Plaintiff's trade dress in connection with the infringing Edge Booster product. Through that extensive and continuous use, Plaintiff's Edge Tamer trade dress has become a well-known indicator of the origin and quality of Plaintiff's edge control products. Plaintiff's Edge Tamer trade dress has also acquired substantial secondary meaning in the marketplace, before Defendants commenced their unlawful use of Plaintiff's trade dress in connection with the infringing Edge Booster product.

84.     Defendants' use of Plaintiff's Edge Tamer trade dress has caused, and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's Edge Tamer trade dress. As a result of this misappropriation, Defendants have profited, and unless such conduct is enjoined by this Court, Defendants will continue to profit by misappropriating the time, labor, skill, effort, and

money that Plaintiff has invested in establishing the reputation of Plaintiff and Plaintiff's Edge Tamer trade dress.

85.     Plaintiff is entitled to injunctive relief and Plaintiff's damages, Defendants' profits, punitive damages, costs, and reasonable attorney's fees.

### COUNT V
### (Unjust Enrichment Under the Common Law
### of the State of Texas as Against All Defendants)

86.     Plaintiff restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

87.     Defendants' marketing, advertising, promotion, sales, and distribution of the infringing Edge Booster product, in direct competition with Plaintiff's Edge Tamer product, constitute unjust enrichment, as Defendants have wrongfully obtained benefits such as profits and the advantage of Plaintiff's goodwill that Plaintiff has developed in association with its Edge Tamer product, at Plaintiff's expense. This has enabled Defendants to market, advertise, promote, sell, and distribute the infringing Edge Booster product with an undue advantage.

88.     Plaintiff has incurred substantial business expenses including time, labor, skill, and money, to develop and design its Edge Tamer trade dress, find suitable manufacturers, and vigorously advertise its Edge Tamer product, including by leveraging the decades of beauty supply industry experience of its executives. Plaintiff has developed goodwill and reputation associated with its Edge Tamer trade dress through these efforts.

89.     Defendants have wrongfully used Plaintiff's trade dress in competition with Plaintiff and have gained and continue to gain a wrongful benefit by undue advantage through this infringing use. Defendants have not been burdened with the time, labor, skill, and money incurred by Plaintiff but are profiting off of the infringing Edge Booster packaging.

90.     Plaintiff's Edge Tamer trade dress is entitled to common law protection. Plaintiff's Edge Tamer trade dress includes unique, distinct, and non-functional designs. Plaintiff has extensively and continuously promoted and used its Edge Tamer trade dress in the United States and in Texas before Defendants commenced their unlawful use of Plaintiff's trade dress in connection with the infringing Edge Booster product. Through that extensive and continuous use, Plaintiff's Edge Tamer trade dress has become a well-known indicator of the origin and quality of Plaintiff's edge control products. Plaintiff's Edge Tamer trade dress has also acquired substantial secondary meaning in the marketplace, before Defendants commenced their unlawful use of Plaintiff's trade dress in connection with the infringing Edge Booster product.

91.     Defendants' use of Plaintiff's trade dress has caused, and will continue to cause unless enjoined, substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to Plaintiff's goodwill and reputation for quality associated with its Edge Tamer trade dress. Defendants have wrongfully obtained and continue to wrongfully obtain a benefit at Plaintiff's expense by taking undue advantage of and free-riding on Plaintiff's goodwill and reputation.

92.     Upon information and belief, Defendants' unjust enrichment at Plaintiff's expense has been intentional, willful, and malicious. Defendants' bad faith is evidenced by at least the similarity of the infringing Edge Booster packaging to Plaintiff's Edge Tamer trade dress and by Defendants' continuing disregard for Plaintiff's trade dress rights.

93.     Plaintiff is entitled to injunctive relief, and at least Defendants' profits.

## COUNT VI
### (Declaratory Judgment Pursuant to 28 U.S.C. § 2201 et seq.)

94.     Plaintiff restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

95.     Plaintiff's Edge Tamer trade dress is inherently distinctive (or, alternatively, has acquired secondary meaning), not functional, and protectable.

96.     There exists an actual controversy between the parties regarding the protectability of Plaintiff's Edge Tamer trade dress.

97.     Because of this controversy, there is a cloud over the enforceability of Plaintiff's Edge Tamer trade dress.

98.     The ends of justice require a declaration of Plaintiff's rights to clarify Plaintiff's legal rights.

99.     Plaintiff is entitled to a declaration that the trade dress in the packaging for Plaintiff's product 24 HOUR EDGE TAMER is inherently distinctive or has taken on a secondary meaning within the relevant market.

100.     Plaintiff is entitled to a declaration that that the trade dress in the packaging for Plaintiff's product 24 HOUR EDGE TAMER is a protectable and enforceable intellectual property.

## JURY DEMAND

101.     Plaintiff demands a trial by jury on all disputed issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

1.      Granting Plaintiff a declaratory relief stating that the trade dress in the packaging for Plaintiff's product 24 HOUR EDGE TAMER is inherently distinctive or has taken on a secondary meaning within the relevant market;

2.      Granting Plaintiff a declaratory relief stating that the trade dress in the packaging for Plaintiff's product 24 HOUR EDGE TAMER is a protectable and enforceable intellectual property;

3.      Finding Defendants to have infringed on Plaintiff's trade dress;

4.      Finding Defendants to have infringed on Plaintiff's trade dress with the knowledge that such imitation of Plaintiff's trade dress was intended to be used to cause confusion, to cause mistake, or to deceive;

5.      Granting Plaintiff injunctive relief and ordering Defendants to cease the sale, advertisement, production, distribution, and trade in the commerce of their infringing product Edge Booster hair pomade and/or gel;

6.      Ordering Defendants to recall all infringing products in the market and to dispose of their inventory of such infringing products;

7.      Granting Plaintiff preliminary and permanent injunctive relief and prohibiting Defendants, their successors or assigns, and their officers, directors, partners, agents, subcontractors, servants, employees, attorneys, affiliates, licensees, divisions, subsidiaries and related entities, and all others acting in concert or participation with Defendants from developing, supplying, manufacturing, advertising, selling, distributing, or otherwise introducing into commerce any product packaging with an appearance similar to that of the packaging for Plaintiff's 24 HOUR EDGE TAMER similar to that of Plaintiff's;

8.      Ordering Defendants to remunerate Plaintiff, in the form of three times all profits derived by Defendants from, and/or all damages suffered by Plaintiff by reason of, Defendants' infringement of Plaintiff's trade dress;

9.      Granting Plaintiff monetary relief for lost profit, loss of goodwill, punitive damages, and legal fees and costs incurred herein;

10.      Plaintiff be awarded statutory damages, costs, and fees as provided for in 15 U.S.C. § 1117, and applicable Texas Statutes;

11.      Plaintiff recover its costs of this action and prejudgment and post-judgment interest, and attorney fees as provided by Federal Rules of Civil Procedure;

12.      Plaintiff be awarded its attorneys' fees and the costs of this action under trademark law, the Lanham Act, Texas law, or Texas common law; and,

13.      Plaintiff recover such other and further relief as the Court may deem just and appropriate.

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury on all issues triable as of right by a jury.

Date: June 16, 2021

Respectfully submitted,

/s/ Peter C. Schechter
Peter C. Schechter
State Bar No. 24090761
SDTX No. 185917
Schechter@obwbip.com
Keelin A. Hargadon
State Bar No. 24087668
SDTX No. 2708053
Hargadon@obwbip.com
**OSHA BERGMAN WATANABE &
BURTON LLP**
909 Fannin Street, Suite 3500
Houston, Texas 77010
Tel. | Fax:  713.228.8600 | 713.228.8778

*Attorneys for Plaintiff, EBIN New
York, Inc.*